UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANA MAGEE, o/b/o Charmette Rawlings, (Deceased), | ) ) ) |
| Plaintiff, | ) ) No. 18 cv 605 |
| v. | ) ) Magistrate Judge Susan E. Cox ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charmette Rawlings ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits and disabled widow's benefits under Titles II and XVI of the Social Security Act ("Act"). The parties have filed cross-motions for summary judgment. For the reasons stated below, the Court remands this matter for further proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment (dkt. 18) is granted; the Commissioner's motion for summary Judgment (dkt. 26) is denied.

**I. Background**[1]

Plaintiff filed applications for disability insurance benefits and supplemental security income on January 30, 2014. (Administrative Record ("R") 217-229.) On July 24, 2015, Plaintiff also filed an application for disabled widow's benefits based on the earnings of her husband who died on May 14, 2013. (R. 20, 218). In all the applications, Plaintiff alleged disability as of January 7, 2013. (R. 217, 224). Plaintiff's claims were denied initially and at the reconsideration stage. (R. 85-142). Plaintiff then requested an administrative hearing, which was held on October 27, 2016 before

---

[1] The Court limits its discussion of the factual background of this case relevant to the analysis provided herein.

Administrative Law Judge ("ALJ") Margaret Carey. (R. 44-84). Plaintiff was represented by counsel, and a Vocational Expert testified during the hearing. *Id*. On March 27, 2017, the ALJ issued a partially favorable written decision granting Plaintiff's applications beginning on December 4, 2016 but denying benefits before that date. (R. 20-37). On November 30, 2017, the Appeals Council denied Plaintiff's appeal, and the ALJ's decision became the final decision of the Commissioner. (R. 1-6). Plaintiff filed the instant action on January 26, 2018 appealing the adverse portion of the ALJ's decision denying benefits from January 7, 2013 through December 3, 2016. (Dkt. 1).[2]

Plaintiff was born on October 4, 1964 and was 48 years old on her alleged disability onset date. (R. 217). Plaintiff graduated high school and completed one year of college. (R. 244). Her past relevant work included skilled sedentary customer service work and semi-skilled sedentary work as a receptionist. (R. 79). Plaintiff was fired from her last job on January 7, 2013. (R. 61, 243).

Plaintiff has a history of coronary artery disease, uncontrolled diabetes, hypertension, hyperlipidemia, and depression. Plaintiff had a heart attack on February 1, 2012, while she was still employed. (R. 514-515). Dr. Francis Almeda's impression included severe coronary artery disease with a 95% ulcerated stenosis of the distal right coronary artery with moderate amount of thrombus and a 70% lesion in the mid right coronary artery and the rest of coronary artery vessels have mild diffuse disease. (R. 502). Plaintiff was diagnosed with acute non-ST elevation myocardial infarction. (R. 514). Plaintiff had coronary angiography, a left heart catheterization and ventriculography, angioplasty, and stenting of the distal right coronary artery and direct stenting of the mid right coronary artery. (R. 501-503). Dr. Almeda noted: "The final result was excellent with TIMI-3 flow without evidence of side branch occlusion, dissection, or distal embolization." (R. 502).

Plaintiff had another non-ST elevation myocardial infarction on September 8, 2012. (R. 422).

---

[2] Plaintiff died on December 31, 2017, before this case was filed. Her daughter, Shana Magee, substituted as the party before Social Security under 20 C.F.R. § 404.503(b)(5) as the Plaintiff in this matter. For ease of reference, however, the Court will refer to Charmette Rawlings as the Plaintiff throughout this opinion.

Dr. Almeda's impression included severe coronary artery disease with 99% stenosis of the left posterolateral segment branch artery. (R. 409). Coronary angiography, left catheterization, left ventriculography, angioplasty and stenting of the left posterolateral segment branch artery were performed. (R. 408-10). Dr. Almeda noted that Plaintiff "underwent successful stenting with excellent results." (R. 409). He further indicated that due to Plaintiff's small vessel size, the need for placement of bare-metal stent as well as Plaintiff's diabetes mellitus, the risk of re-stenosis was high. *Id*.

On December 10, 2014, Plaintiff's cardiologist Dr. Lokesh Chandra stated that she had Canadian Cardiovascular Society ("CCS") Class II-III angina with CCS Class III angina as of March 2, 2015. (R. 570, 616). Plaintiff was hospitalized again from April 24-28, 2015 at Advocate South Suburban Hospital. (R. 854-907). Cardiac catheterization, coronary angiography, and ventriculography were performed on April 27, 2015. (R. 859-62). The conclusion was diffuse coronary artery disease in both left and right systems. (R. 860). Dr. Chandra noted that disease in the subbranches of the left anterior descending artery and circumflex was "not amenable to intervention, but may contribute to symptoms." *Id*. Stenting was performed in the distal right coronary artery, which had a 95% concentric stenosis. (R. 861).

Plaintiff was seen at the Ingalls Memorial Hospital emergency room on April 23, 2016 for chest pain and palpitations. (R. 747-761). On May 3, 2016, Plaintiff was admitted to Ingalls for left arm pain. (R. 810). She refused a stress test. *Id*. Dr. Chandra stated that he "explained regarding this in detail and also the fact that obviously she has more coronary ischemia. Further events can happen as an outpatient, but she does not want to stay…She is aware of all risks of missing significant coronary artery disease." *Id*.

Plaintiff was hospitalized from December 4, 2016 through January 4, 2017 at Ingalls Memorial Hospital. (R. 908-1091). On December 4, 2016, Plaintiff had intermittent chest pain lasting 5-10 minutes associated with exertion. (R. 915). She rated her pain at a level of 9 radiating to her neck

on both sides. *Id*. Plaintiff also had substernal pain and pain at rest. *Id*. On December 5, 2016, cardiac catheterization showed severe coronary disease with severe bifurcation 90% lesion of the mid left anterior descending artery, 80% lesion of the first diagonal artery, a 60% to 70% lesion of the mid circumflex artery before the obtuse marginal 2 branch and the site of the previous stenting in the left posterolateral segment branch artery. (R. 941-43). The mini vision bare metal stent had 100% in-stent restenosis lesion in the mid portion, and there was a severe 95% stenosis in the proximal right coronary artery (native vessel). (R. 942). The cardiovascular surgeon Dr. Almeda stated that Plaintiff had severe coronary artery disease and complex coronary anatomy. *Id*. He recommended coronary bypass graft surgery because of Plaintiff's diabetes mellitus and severe disease. *Id*. Dr. Almeda indicated that Plaintiff "was not a good candidate for multivessel stenting due to complexity of her coronary artery disease, high Syntax score, as well as her history of noncompliance." *Id*. Plaintiff elected to have quadruple bypass surgery which was performed on December 13, 2016. (R. 915-16). While hospitalized on December 21, 2016, Plaintiff was evaluated for confusion. (R. 1003-04). After examining Plaintiff and reviewing a recent CT scan of Plaintiff's head, Dr. Engin Yilmaz concluded that Plaintiff most likely suffered an ischemic stroke. *Id*. Plaintiff was discharged to acute inpatient rehabilitation on December 23, 2016 and discharged from rehabilitation to her home on January 4, 2017. (R. 909, 917).

      The ALJ issued a partially favorable written decision granting benefits as of December 4, 2016, the day she was hospitalized for a quadruple bypass and a stroke, and denying benefits prior to that date. (R. 20-37).[3] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 7, 2013. (R. 23). At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus, chronic ischemic heart disease, and diabetic neuropathy. *Id*. The ALJ found various non-severe impairments, including Plaintiff's

---

[3]   The Court limits its summary to the unfavorable portion of the ALJ's decision.

headache in July 2014, obesity, and bilateral hand pain and weakness. (R. 24). After considering the "Paragraph B" criteria, the ALJ found that Plaintiff's affective disorder was a nonsevere impairment through December 4, 2016. (R. 25-27). The ALJ also determined that Plaintiff had the following non-medically determinable impairments: osteoarthritis, rheumatoid arthritis, Raynaud's disease, shoulder pain, and memory issues. (R. 24-25). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 28-29).

Before step four, the ALJ found that prior to December 4, 2016, Plaintiff had the residual functional capacity ("RFC")[4] to perform sedentary work except Plaintiff cannot climb ladders, ropes or scaffolds, may occasionally climb stairs and ramps and kneel, crouch, and crawl, and may frequently balance and stoop. (R. 29). At step four, the ALJ determined that prior to December 4, 2016, Plaintiff was capable of performing her past relevant work as a receptionist and that this work did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (R. 35). Based on this determination, the ALJ did not proceed to step five and found that Plaintiff was not disabled prior to December 4, 2016 under the Act. (R. 36).

**II. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520(a)(4)(i)-(iii); 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the impairment(s) does meet or equal

---

[4] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zuraski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941(7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C. § 405(g).

**III. Discussion**

Plaintiff raises three issues on appeal: 1) the ALJ's finding that Plaintiff's heart impairment did not meet or equal Listing 4.04C is not supported by substantial evidence and is based upon legal error; 2) the ALJ erred in failing to obtain the testimony of a medical expert regarding the onset date as required by Social Security Ruling 83-20; and 3) the ALJ's determination that Plaintiff's mental impairments were not severe and hand impairments were non-medically determinable impairments is not supported by substantial evidence. Because the Court agrees that the ALJ failed to properly evaluate whether Plaintiff's severe heart impairment meets or equals Listing 4.04C at step three and this finding by itself warrants remand, it does not reach the remaining issues raised by Plaintiff in this appeal.

At step three, a claimant is entitled to benefits if she has an impairment, or combination of impairments, which meets or equals an impairment found in the Listing of Impairments. *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). "The Listing describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." *Id*. at 379-80; *see also* 20 C.F.R. §§ 404.1525(a), 416.925(a) (stating that each listing describes an impairment "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."). "A claimant may also demonstrate presumptive disability by showing that [her] impairments are accompanied by findings that are equal in severity to those described in a section of the Listing." *Maggard*, 167 F.3d at 380. Plaintiff bears the burden of proving her condition meets or equals a listed impairment by satisfying all the criteria of the listed impairment. *Id*.

Listing 4.04 relates to ischemic heart disease, which is narrowing or obstruction of coronary arteries interfering with the normal flow of blood to the heart muscle. 20 C.F.R. Part 404, Subpart P, App. 1, 4.00(E)(1). Listing 4.04C requires evidence of coronary artery disease demonstrated by:

1. Angiographic evidence showing:

   a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
   b. 70 percent or more narrowing of another nonbypassed coronary artery; or
   c. 50 percent or more narrowing involving a longer (greater than 1 cm) segment of a nonbypassed coronary artery; or
   d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
   e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404, Subpart P, App. 1, 4.04C. Thus, to meet Listing 4.04C, a claimant must show both the necessary angiographic evidence and resultant "very serious" limitations regarding activities of daily living ("ADLs").

The ALJ considered Plaintiff's heart condition under the first prong of Listing 4.04C but found insufficient "evidence of narrowing due to coronary artery disease as required by the listing." (R. 28). The ALJ concluded that Plaintiff's heart disease did not meet or medically equal Listing 4.04C because "[t]hough the claimant was treated for coronary artery disease prior to the alleged onset date, in September 2012, she had excellent results (Exhibit 5F, p. 51) until more recent treatment at the time of the established onset date, December 4, 2016…." *Id*. The ALJ also stated that "…though she had had treatment for coronary artery disease in September 2012 as noted, she did not have significant care through December 3, 2016, related to this, which supports that her symptoms were not significantly distressing to her during the relevant time period." *Id*. at 30.

Plaintiff argues that in reaching these conclusions, the ALJ failed to address substantial contrary evidence in the record. The Court agrees. As to the first requirement of Listing 4.04C, the record shows that Plaintiff had four cardiac catheterizations between February 2012 and December 2016. Stenting was performed twice in 2012, once in 2015, and quadruple bypass surgery was performed on December 13, 2016. Plaintiff contends, and the Commissioner does not dispute, that

each catheterization found listing level narrowing of the coronary arteries.[5] Plaintiff complains that the ALJ failed to mention the April 2015 cardiac catheterization which showed a 95% blockage of the distal right coronary artery and required stenting again, which Plaintiff argues establishes listing-level severity of her heart disease. Plaintiff also notes that the ALJ failed to mention Dr. Chandra's opinion in May 2016 that "obviously [Plaintiff] has more coronary ischemia." (R. 810).

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Moore v. Colvin*, 743 F.3d 1118, 1124 (7th Cir. 2014) (holding an ALJ "simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging the significant contrary evidence in the record.").

The ALJ committed error by ignoring Plaintiff's April 2015 stenosis which is contrary to her ruling that there was no "evidence of narrowing due to coronary artery disease as required by" Listing 4.04C. (R. 28). Contrary to the ALJ's finding, the April 2015 stenting was "significant care" prior to December 2016. The April 2015 cardiac catheterization which showed 95% blockage also contradicts the ALJ's finding that Plaintiff had "excellent results" from the 2012 stenting until the quadruple bypass in December 2016. Because the ALJ did not consider significant evidence showing that Plaintiff met the first requirement of Listing 4.04C, substantial evidence does not support her conclusion that Plaintiff failed to meet or equal Listing 4.04C.

The Commissioner concedes that the ALJ could have better explained her finding about

---

[5] The Commissioner points out that the ALJ noted the September 2012 angiography showing "severe coronary artery disease with 99% stenosis of the left posterolateral segment branch artery" that was successfully eliminated with stenting but correctly notes that this was before the alleged onset date January 7, 2013. (R. 20, 30, 217, 224, 408-09).

9

Plaintiff's heart impairment but argues that the error was harmless because even if the April 2015 stenosis met the first prong of Listing 4.04C, the second prong of the listing—the "very serious limitations" regarding ADLs—was not met. The ALJ's failure to expressly consider Plaintiff's April 2015 coronary artery narrowing was not harmless because the ALJ also ignored substantial medical evidence that supports a finding that Plaintiff meets the second requirement of Listing 4.04C.

The ALJ did not discuss Plaintiff's ADLs in analyzing whether Plaintiff's heart impairment met a listed impairment at step three. (R. 28). In her brief, the Commissioner cites evidence suggesting that Plaintiff did not have the requisite "very serious limitations" regarding ADLs. The Commissioner makes much of the April 1, 2015 report from examining psychologist Dr. Gregory C. Rudolph, Ph.D., which the Commissioner believes "reflects at least a modicum of ability to engage in ADLs." (Dkt. 27 at 10). Dr. Rudolph stated that Plaintiff was "able to take care of her basic needs." (R. 627). The Commissioner emphasizes that Dr. Rudolph found, among other things, that Plaintiff could dress and bathe herself, use the microwave, and occasionally assist her sister with laundry or housecleaning, although she said she did not drive and did not cook or grocery shop herself. *Id*.

The Commissioner's harmless error argument is not persuasive for two reasons. First, the Commissioner's contention that Dr. Rudolph's findings mean that the second prong of Listing 4.04C is not met is an impermissible post hoc rationalization. The Commissioner is, in essence, asking the Court to weigh the evidence and determine in the first instance whether the ADLs evidence cited by the Commissioner demonstrates that Plaintiff did not meet the second prong of Listing 4.04C. Since the ALJ did not make a finding regarding the ADLs prong of Listing 4.04C or rely on Dr. Rudolph's findings or any other evidence in concluding that Plaintiff failed to meet the ADLs prong of Listing 4.40C, her decision cannot be upheld on this basis. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (stating "[b]ut these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here."); *Steele v. Barnhart*, 290 F.3d at 941 (stating "regardless whether there is enough evidence in

10

the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and [for the court to] confine [its] review to the reasons supplied by the ALJ."). Without deciding whether Plaintiff meets the second prong of Listing 4.04C, which is an issue which should be addressed on remand by the ALJ, the Court finds that the ALJ erred in failing to consider the ADLs prong of the Listing.

Second, and more importantly, even if the ALJ had considered Dr. Rudolph's findings and analyzed whether Plaintiff met the second prong of Listing 4.04, the ALJ failed to discuss or consider other significant evidence of record that may support a disability finding at step three. As Plaintiff points out, the ALJ did not mention the opinion from her cardiologist Dr. Chandra that she had Canadian Cardiovascular Society ("CCS") Class II-III angina as of December 10, 2014 which deteriorated to CCS Class III angina by March 2, 2015. (R. 570, 616). The Court agrees with Plaintiff that the ALJ was required to discuss her cardiologist's diagnosis of Class III angina at step three. This evidence is highly relevant. CCS Class III angina is described as "marked limitation of ordinary physical activity" with symptoms occurring with "walking one or two blocks on the level and climbing one flight of stairs in normal conditions and at normal pace." (R. 317).

The parties dispute whether CCS Class III angina can satisfy the second prong of Listing 4.04C. Plaintiff argues that CCS Class III angina equates to "very serious limitations" in activities of daily living as required by the second prong of Listing 4.04C.[6] In another impermissible post hoc argument, the Commissioner contends that Plaintiff does not meet the second prong of Listing 4.04C because her CCS Class III angina rating does not reflect symptoms at rest. Angina symptoms at rest is the equivalent of a CCS Class IV functional classification, which is described as "[i]nability to

---

[6] The Commissioner claims that Plaintiff's argument that CCS Class III angina equates to "very serious limitations" regarding ADLs "is nothing more than a post hoc argument that should be rejected because neither Dr. Chandra nor anyone else made such a correlation at any time prior to the ALJ's decision." (Dkt. 27 at 11). Plaintiff's argument is not an improper post hoc rationalization, as the Commissioner objects, but rather is an appropriate explanation of why specific evidence of record supports the potential applicability of Listing 4.04C.

11

carry on any physical activity without discomfort, anginal syndrome may be present at rest." (R. 317). The ALJ did not cite Plaintiff's failure to demonstrate angina symptoms at rest as a reason for her decision at step three.

In any event, even if the Court were to consider the Commissioner's interpretation of the second prong of Listing 4.04C as requiring Class IV functional limitations on the merits, it fails. The Commissioner points out that the agency explained in 2006, in its final rules revising the heart listings, that "[t]he phrase 'very serious limitations in the ability to independently initiate, sustain, or complete' [ADLs denotes] an 'extreme' limitation; that is, a limitation of listing-level severity." 71 FR 2312-01, at *2323 (Jan. 13, 2006). The Commissioner further quotes the agency as stating that "[t]he standard describes limitations in all of an individual's day-to-day activities, so it includes limitations from cardiovascular symptoms both during normal activities and at rest. *Id*. at *2323-24. From this, the Commissioner concludes that the phrase "very serious limitations in the ability to independently initiate, sustain, or complete" ADLs contemplates angina symptoms at rest.

The Commissioner's assertion that the phrase "very serious limitations in the ability to independently initiate, sustain, or complete" ADLs requires angina symptoms at rest is contradicted by the agency's explanation in its final rules that "the final rules are not significantly different from the prior rules." 71 FR 2312-01, *2323 (Jan. 13, 2006). The prior version of Listing 4.04C required Class III, not Class IV, functional criteria. In the 1991 Notice of Proposed Rulemaking ("NPRM") for the prior rules enacted on February 10, 1994, the agency proposed to expressly include the New York Heart Association ("NYHA") functional criteria in the cardiovascular listings. 56 FR 31266-01 (July 9, 1991); *see also* 71 FR 2312-01, *2323 (Jan. 13, 2006). The NPRM for the prior rules stated that 4.04C required "[d]ocumented functional class III NYHA criteria" as well as the angiographic evidence.[7] 56 FR at *31274. In response to comments, however, the agency agreed "that there were

---

[7] The CCS four-level grading scale of angina is similar to the New York Heart Association's functional classifications of angina. The CCS grading system was modeled on the New York Heart Association's functional classification of

a number of real problems in using the NYHA classification in an adjudicatory context" and believed "that the most straightforward approach would be simply to state exactly what we require in the listings." 59 FR 6468, at *6480 (Feb. 10, 1994). The agency explained that it then removed "the references to the NYHA functional classifications from final listings 4.02 and 4.04 and replac[ed] them with explicit, descriptive functional criteria based on the NYHA criteria…." *Id*. at *6479-6480.

From February 10, 1994 to April 12, 2006, Listing 4.04C's functional criteria required "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical activity, *even though the individual is comfortable at rest*." Social Security Program Operations Manual System (POMS), Cardiovascular Listings from 02/10/94 to 4/12/2016, https://secure.ssa.gov/poms.nsf/lnx/0434124005-0434124011 (emphasis added). This is similar to the NYHA Class III classification, which is described as "marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea." https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure. Because the functional criteria of the current version of Listing 4.04C "is not significantly different" from the prior version of Listing 4.04C which required functional criteria based on NYHA Class III criteria including that "the individual is comfortable at rest," the Court rejects the Commissioner's suggestion that Plaintiff must demonstrate angina symptoms at rest to meet the second prong of Listing 4.04C.

The Commissioner's interpretation of the second prong of Listing 4.04C also conflicts with the agency's explanation that while the current rules continue to omit the NYHA classifications, the rules "state exactly what [the agency] requires in the listings." 71 FR at *2323. In 2006, the agency reiterated in its final rules revising the heart listings that "[t]his explanation still holds true, especially

---

patients with heart disease, and the American Medical Association classes of organic heart disease. https://www.ncbi.nlm.nih.gov/pubmed/11992130. Both CCS Class III and the NYHA Class III signify that the claimant has marked limitation of physical activity.

since the final rules are not significantly different from the prior rules." *Id*. The plain language of the current version of the second prong of Listing 4.04C "state[s] exactly what [is] require[d], and it does not require claimants to demonstrate angina symptoms at rest; it only requires angina "[r]esulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Part 404, Subpart P, App'x 1, § 404(C). For these reasons, the Court reads the agency's explanation in its final rules that the second prong of Listing 4.04C "includes limitations from cardiovascular symptoms both during normal activities and at rest," as including, but not requiring, angina symptoms at rest. 71 FR at 2323-2324.

Because the ALJ's decision that Plaintiff's coronary artery disease did not meet Listing 4.04(c) is not supported by substantial evidence, this matter must be remanded for a more thorough step three analysis of Listing 4.04C. *Dial v. Colvin*, 2016 WL 6997502, at * (M.D. N.C. Nov. 30, 2016) (recommending remand where the ALJ failed to address specific evidence supporting the potential applicability of Listing 4.04, including evidence that plaintiff had class III angina pectoris under the NYHA); *see also Childress v. Colvin*, 845 F.3d 789, 793 (7th Cir. 2017) (holding a Class III NYHA rating precludes the performance of full-time sedentary work).

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment (dkt. 18) is granted; the Commissioner's motion for summary Judgment (dkt. 26) is denied.

November 9, 2018

_____
U.S. Magistrate Judge, Susan E. Cox